IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RODNEY GAINES,<br><br>**Defendant** | CRIM. NO. SAG-22-00125 |

**GOVERNMENT'S SUPPLEMENTAL MEMORANDUM
CONCERNING SPOLIATION ISSUE**

The United States of America, by counsel, hereby submits its supplemental memorandum addressing recently obtained information bearing on the spoliation issue that has been the subject of previous litigation in this case. For the reasons discussed below, the Court should deny any renewal of the Defendant's motion to dismiss. The government remains unopposed to the Court giving a spoliation instruction to the jury.

**INTRODUCTION**

Rodney Gaines is charged in a Third Superseding Indictment with the following crimes: conspiracy to distribute narcotics in violation of 21 U.S.C. § 846 (Count One); conspiracy to possess firearms in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(o) (Count Five); and two counts of possession with the intent to distribute cocaine (Counts Eight and Twelve). Trial began on March 17, 2025 and is ongoing. The government anticipates resting on March 31, 2025.

As the trial was underway, the government obtained information from the Maryland State Police (MSP) that raised the possibility that the MSP cellular phone at issue in the previous spoliation litigation (hereinafter the "Ward phone") may not have had its memory wiped during a

1

late 2023 phone upgrade (as previously believed). Rather, the new information suggested that arrangements may have been made to have the Ward phone exempted from the 2023 upgrade because, at the time, Trooper Ward had evidence on the Ward phone that he wanted to preserve. The new MSP information also indicated that Trooper Ward had not returned the Ward phone to MSP following his suspension in January 2024.

The Court conducted an evidentiary hearing based on this new evidence on Friday, March 28, 2025.[1] Four witnesses testified during the hearing: MSP Trooper James C. Ward (who testified during the hearing that he has put in his resignation papers); MSP Trooper Vincent Hodgins (who previously was Trooper Ward's supervisor and was involved in recent inquiries into the missing phone); Thomas Bonin who is a member of MSP's information technology unit; and MSP Lt. Michael Bonczewski who is Trooper Ward's current supervisor who made additional efforts during the last several days to locate the phone in question.

Apart from the new MSP information about the Ward phone, two other recent developments also impact the spoliation issue. First, the government recently acquired, through the assistance of witness JB, a cellular phone[2] that appears to contain at least some of the

---

[1] The defense has referenced *United States v. Johnson*, 996 F.3d 200 (4th Cir. 2021) several times in connection with the recent litigation. *Johnson* does set forth the law of spoliation and reversed a district court for not conducting an evidentiary hearing concerning the circumstances of the return of a cellular phone to a victim's family, where the defense argued that the phone should have been retained. *Id.* at 215-16. What distinguishes this case from *Johnson* is that the Court has actually conducted such an evidentiary hearing about the missing Ward phone.

[2] JB indicated that he used two cellular phones to talk to Trooper Ward. The government was recently able to acquire one cellular phone from JB (specifically from a close personal associate of JB who provided the cellular phone on request). It should be noted that the recently acquired phone has the same call number as the phone that was the subject of the JB wiretap during 2021-2022; however, the recently acquired phone does not have the same IMEI number as the wiretapped phone. The government believes it likely that the recently acquired phone has the SIM card for the wiretapped phone but is not the same handset (device) as the wiretapped phone.

previously missing text communications JB had with Trooper Ward. Second, JB has now testified at trial. During direct examination, JB testified that he had received promises of no jail time from Trooper Ward (promises which the government later told him were not valid). During cross-examination, JB repeated and reaffirmed that he had in fact received numerous promises of no jail time and other types of assistance from Trooper Ward. In general, JB testified in a way that appeared to confirm everything that the defense believes would be shown by the missing Ward/JB communications. JB also complained extensively about his treatment by the government and made numerous comments favorable to the defense.

## ARGUMENT

### THE COURT CORRECTLY DENIED THE MOTIONS TO DISMISS AND THE NEW INFORMATION DOES NOT WARRANT REVISITING THOSE DENIALS.

As discussed in Judge Gallagher's November 25, 2024 Memorandum Opinion (Memorandum Opinion at 12-13), a defendant claiming a due process violation due to the failure to preserve evidence must show two elements: first, that the missing evidence had an exculpatory value that was apparent before the evidence was destroyed and that it was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonable available means; and second, that the loss of the evidence was in bad faith. *See* Memorandum Opinion at 12-13 (citing *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *California v. Trombetta*, 467 U.S. 479, 489 (1984); *United States v. Perry*, 92 F.4th 500, 413 (4th Cir. 2024)).

Here, the defense claims that the new MSP information about the Ward phone provides new evidence of bad faith and warrants a reconsideration of the Court's previous denial of the

---

Despite efforts made, the government has not been able to acquire the second phone that JB reported using.

3

motion to dismiss. The Court should reject that claim.

**I.      Comparable Evidence.**

First, the totality of the new developments actually strengthens Judge Gallagher and this Court's holdings that the defense has evidence "comparable" to the lost text messages. *See* Memorandum Opinion at 13. Specifically, Judge Gallagher held that JB's handwritten letter[3] provided comparable evidence and "compelling impeachment material" that the defense would be able to use with respect to JB. *Id* at 13. Judge Gallagher also noted that because the government was not calling the Trooper as a witness at trial, it would not be possible for the government to rebut JB's claims in his letter. Both of those conditions remain in place: the defense still has JB's letter (if they wish to use it) and the government has not called the Trooper as a trial witness[4] (and is about to rest its case).

Additionally, the defense's available comparable evidence has now been greatly strengthened in two ways. First, the defense now has the text messages and other information from the recently acquired JB cellular phone. The information from that phone does partially ameliorate the spoliation impact from the loss of the Ward/JB text messages because it provides the defense with at least some of the text messages between JB and Trooper Ward (this is in addition to the set of text messages the defense already had: those from JB's phone during the time

---

3      The letter was written by JB and sent directly to Judge Gallagher on February 16, 2023. In the letter, in language quite similar to his recent testimony, JB complains about his treatment by the government, that promises were made, that promises were broken, and that he felt used by the government. The letter is eight pages long.

4      The government did call the Trooper as a witness during the March 28 evidentiary hearing, but those circumstances were obviously different and has no effect of rebutting JB's claims before the jury.

that it was being wiretapped during late December 2021 and early January 2022). Although the newly acquired phone information may not *eliminate*[5] the spoliation problem, the information from the new phone does mitigate the spoliation impact.

Second, the recent testimony of JB also greatly improves the defense position and weakens (and comes close to eliminating) the impact of the lost JB/Ward text messages. As the Court no doubt remembers, during his cross-examination, JB made no secret of his belief that he had been made numerous promises from law enforcement; that he had been promised no jail time; that he had been mistreated by the government; and that he had received favors and help from law enforcement during his cooperation. JB testified that he had engaged in text messages with Trooper Ward that would have confirmed his recollections. In short, JB confirmed every point that the defense might have wanted to make from the lost text messages.

None of this was rebutted by the government. On the contrary, the government had already elicited similar information from JB on direct examination that JB had been given promises by Trooper Ward but that JB was later told by government counsel that any such promises were not valid (JB subsequently signed the plea and cooperation agreements in his case). Thus, the defense has powerful and unrebutted evidence on its JB-related points.[6]

---

5   JB reported talking to Ward on two cellular phones, and the government has only been able to acquire one phone (or, at least, a phone containing the SIM card from the original phone). The defense will likely argue that in the absence of having the actual Ward phone, there is no way to be certain that the newly acquired JB phone has all of the data that would have been acquired from the actual Ward phone. Accordingly, while the newly acquired phone mitigates the issue, the government does not argue that it eliminates the spoliation issue.

6   Two additional points should be made. First, the government attempted to put the JB letter into evidence and the defense objected. Having the letter in evidence would have provided further comparable evidence in this case, but it was the defendant's decision to oppose. Second, if there is any evidence rebutting JB's letter, it will only result if the defense calls certain law enforcement

Because of the newly acquired JB phone and given JB's trial testimony, the defense is in a very strong position to make whatever arguments they want concerning JB. Indeed, the combination of evidence - the recent testimony of JB (including his thorough criticism of the government), the fact of the *missing* text messages, and the Court's likely spoliation instruction – actually make for a *better* evidentiary record for the defense than the text messages themselves would.

## II.   Bad Faith.

The government assumes that the defense will argue that its bad faith argument is stronger in light of the new MSP evidence and the record from the recent evidentiary hearing.7  The government makes two points in response:

First, it is simply not necessary for the Court to again address the bad faith issue. As discussed in the preceding section, there is abundant comparable evidence available to the defense. The Court should deny any renewed motion for that reason.

Second, the government still does not believe that the record supports a showing of bad

---

witnesses (such as Trooper Ward) at trial. Again, that would be a choice from the defense. The defense's choice to *attack* the comparable evidence does not change the fact that the comparable evidence exists.

7    The defense has also cited *Kyles v. Whitley*, 514 U.S. 419 (1995) in recent argument. If the government understands the argument correctly, the defense position is that if the Ward phone still exists, then *Kyles* imposes upon the government an obligation (perhaps analyzed differently than the obligations stated in the spoliation cases, such as *Youngblood*) to produce the cell phone. The problem is that the phone is lost. As such, on this particular set of facts, the government is not certain that its obligations differ under *Kyles* versus the *Youngblood* cases. In the end, the record at this point (unfortunately) indicates that the Ward phone is lost despite efforts to find it, including by physically checking locations where it might be found and also by conducting evidentiary hearings with the persons involved in the circumstances of the loss of the phone and the efforts to locate it.

faith with respect the missing cellular phone.    To be clear, the record is far more complicated than the government would like and the recent evidence does contradict information that was presented during the September 19, 2024 evidentiary hearing – including that the Ward phone was not actually destroyed (or wiped) but was apparently exempted from being destroyed (or wiped).    The continued absence of the cellular phone and the confusion about what happened during the cellular phone upgrade is frustrating (to the defense and to the Court no doubt, and also to the government).

Nonetheless, the government respectfully believes that this record is more reflective of disorganization than it is of bad faith.    It appears that Trooper Ward did want to preserve the evidence on his old cellular phone before the 2023 MSP upgrade (a point that is consistent with his September 19 testimony).    It also appears that for reasons that are not clear (although perhaps it is a result of bad timing – due to a lengthy end-of-year annual leave which lead almost directly into the Trooper's January 2024 suspension, a suspension that has persisted since and until his recent resignation), the phone has been misplaced.[8]    All of this continues to be evidence of negligence, messiness, and (again) disorganization.    But those are not the same as bad faith.

## CONCLUSION

For the forgoing reasons, the United States respectfully requests that the Court deny any renewed motion to dismiss by the Defendant.

---

8    The defense appears to argue that the phone remained in Trooper Ward's possession and was retained, or disposed of, by him during his suspension.  Given the kinetic status of Trooper Ward's suspension status during the December 2023 – January 2024 timeframe, it is also possible that the phone simply got misplaced during the course of placing the Trooper on suspension and closing his offices and workspaces.  Obviously, even that is hardly an ideal theory from the government's perspective.

Respectfully submitted,

Kelly O. Hayes
United States Attorney


By:_____/s/_____
LaRai N. Everett
Michael C. Hanlon
Assistant United States Attorneys

36 South Charles Street, Fourth Floor
Baltimore, Maryland 21201
(410) 209-4895
Michael.hanlon@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of March 2025, a copy of the foregoing response was provided to Charles Burnham, Esquire by CM/ECF.

                                           /s/
                                    Michael C. Hanlon
                                    Assistant United States Attorney